1   Daniel E. Thenell, OSB No. 971655
    Thenell Law Group, P.C.
2   12909 SW 68th Parkway, Suite 290
    Portland, Oregon 97223
3   Telephone: (503) 372-6450
    Facsimile: (503) 372-6496
4   *Attorneys for Plaintiff*

5

6

7

8                  UNITED STATES DISTRICT COURT

9                   FOR THE DISTRICT OF OREGON

10                      PORTLAND DIVISION

11  | JEFFREY DAVIS, an individual, | Case No.   3:18-cv-00346 |

12  Plaintiff,                        **COMPLAINT**

13          vs.                       (Civil Rights 1st Amendment/14th Amendment
                                      violations; Wrongful Discharge; Intentional
14  CLACKAMAS COUNTY SHERIFF CRAIG    Infliction of Emotional Distress; Negligent
    ROBERTS, in his individual capacity;   Infliction of Emotional Distress; Whistleblower
15  CLACKAMAS COUNTY UNDERSHERIFF     Retaliation)
    MATT ELLINGTON, in his individual
16  capacity; and through the CLACKAMAS   42 U.S.C. §1983
    COUNTY SHERIFF'S OFFICE, a political   ORS 659A.203(1)(b)(A) and (B)
17  subdivision of CLACKAMAS COUNTY,
    OREGON

18                                    Damages at least $791,000 or an amount to be
                                      proven at trial
19  Defendants.

20                                    **JURY TRIAL DEMANDED**

21

22          **COMPLAINT AND DEMAND FOR JURY TRIAL**

23          Plaintiff, by and through his attorneys, Thenell Law Group, P.C., bring this Complaint

24  herein and states and alleges as follows:

25  / / /

26  / / /

COMPLAINT- Page 1                                          2016-110

# I.    INTRODUCTORY STATEMENT

1.

This action is filed by Plaintiff under 42 U.S.C § 1983 and ORS 659A.200 for events alleging denial of freedom of association in violation of the First and Fourteenth Amendments of the United States Constitution, and violations of the state whistleblower protections under ORS 659A.203(1)(b)(A) and (B).

2.

This court has jurisdiction over Plaintiff's claims of violations of Federal Constitutional Rights under 28 U.S.C. §§ 1331 and 1343. The Court has jurisdiction over Plaintiff's State law claims under 28 U.S.C. § 1367.

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

# II.    PARTIES

4.

At all material times, Plaintiff was a resident of West Linn, Oregon and was employed in Clackamas County, Oregon.

5.

At all material times, CRAIG ROBERTS ("Defendant Roberts" or "Sheriff Roberts") was the elected Sheriff of Clackamas County, Oregon. Defendant Roberts was working under the color of law on behalf of Clackamas County Sheriff's Office ("CCSO"), an agency of Clackamas County, Oregon ("County"). Defendant Roberts is a final policy maker for CCSO. Defendant Roberts is sued in his individual capacity.

6.

At all material times, MATT ELLINGTON ("Defendant Ellington" or "Undersheriff Ellington") was serving as the Undersheriff of Clackamas County, Oregon. Defendant Ellington

COMPLAINT- Page 2

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

was working under the color of law on behalf of Clackamas County Sheriff's Office ("CCSO"), an agency of Clackamas County, Oregon ("County"). Defendant Ellington is a final policy maker for CCSO. Defendant Ellington is sued in his individual capacity.

7.

At all material times, Clackamas County is a political subdivision of the State of Oregon. The CCSO is a department within Clackamas County. Defendant Clackamas County is a proper party under 42 U.S.C. § 1983. At all times relevant to this Complaint, CCSO and County employed Defendant Roberts and Defendant Ellington. At all times relevant to this Complaint, Defendant Roberts and Defendant Ellington was acting pursuant to Defendant CCSO's and Defendant Clackamas County's laws, customs, and/or policies. As the employer of Defendant Roberts and Defendant Ellington, Clackamas County is vicariously liable for all the tortious and unconstitutional acts and omissions the defendants committed within the course and scope of their employment, pursuant to ORS 30.265. Clackamas County was and is a "Public Employer" under ORS 659A.200(6).

8.

At all times relevant to this Complaint, Plaintiff was a "Public Employee" pursuant to ORS 659A.200(2).   Plaintiff also enjoyed the Protections of the Peace Officer Bill of Rights found in ORS 236.360.

9.

ORS 659A.203(1)(b)(A) and (B) states, in relevant part, it is an unlawful employment practice for any public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
> (A)    A violation of any federal or state law, rule or regulation by the state, agency or political subdivision;

/ / /

COMPLAINT- Page 3

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

(B)    *Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision;*

10.

All Defendants acted under the color of law at all times relevant to this Complaint.

11.

Plaintiff is entitled to an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988. and ORS 659A.200.

### III.    FACTUAL ALLEGATIONS

#### A. *Plaintiff's Public Service Record*

12.

Plaintiff was a veteran of the Clackamas County Sheriff's Office ("CCSO"), with almost 23 years' experience as a fulltime Deputy Sheriff in Oregon as certified by the Department of Public Safety Standards and Training (DPSST).

13.

While employed with the CCSO, Plaintiff served in the following positions: Plaintiff joined the CCSO as a recruit Deputy Sheriff in July 1994 and was assigned to the Patrol Division, Plaintiff successfully passed all phases of training and received his Basic Certificate. In 2000 Plaintiff moved into the Special Investigations Unit (SIU) as an Investigator, tasked with investigating Drug and Vice crimes. In May 2004, Plaintiff was promoted to Sergeant and assigned to the Patrol Division as a Patrol Sergeant. In 2006, Plaintiff moved back to SIU as a Supervisor. In this role, Plaintiff was instrumental in the formation of the Clackamas County Inter-Agency Task Force (CCITF). In March 2009, Plaintiff was promoted to Lieutenant and moved back to the Patrol Division as a Shift Watch Commander. Finally, in February 2014, Plaintiff headed CCITF as the Task Force Commander. Currently Plaintiff holds the following certificates with DPSST: Basic, Intermediate, Advanced, and Supervisory.

COMPLAINT- Page 4

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

14.

All yearly performance evaluations were meets or exceeds, with the overwhelming amount of them being "exceeds." In 2004, Plaintiff was nominated and received Regional Officer of the Year Award from the Oregon Narcotics Enforcement Association (ONEA). In 2005, Plaintiff was nominated and received the Pacific Organized Crime Drug Enforcement Task Force Award (OCDETF). In July 2016, CCITF won the award for Task force of the Year as recognized by ONEA. During his career, Plaintiff received numerous letters of appreciation, including letters from Sheriff Roberts.

15.

Had Plaintiff retired after 25 years of service, he would be entitled to County-provided healthcare coverage until he reaches 65 years of age.  The County would also have to provide for one-half the cost of his wife's health care coverage until she reaches the age of 65.

### B.  Clackamas County's Policy and Practice of Disproportionate Discipline

16.

In 2006, Plaintiff introduced Dave Kirby to Sheriff Roberts. Plaintiff recommended Kirby as an up and coming, well-liked leader at the Washington County Sheriff's Office (WCSO), as a possible undersheriff. Plaintiff introduced Kirby and Roberts in the hopes of Kirby coming to the CCSO to help improve the agency.

17.

In October 2007, Sheriff Roberts hired David Kirby as a second Undersheriff. Undersheriff Kirby, was originally supposed to be a change agent, in that he was hired to help the agency improve disciplinary procedure and consistently enforce policy and procedure. Mr. Kirby's efforts were designed to improve and modernize the culture of the CCSO.

/ / /

/ / /

COMPLAINT- Page 5

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

18.

During his tenure as Undersheriff, David Kirby reported directly to Sheriff Craig Roberts.

19.

As part of his position, Undersheriff Kirby was responsible for investigating misconduct within CCSO. Where Undersheriff Kirby found evidence of misconduct, he would propose a method of discipline. Sheriff Roberts was ultimately responsible for all disciplinary matters within the CCSO.

20.

Beginning in 2009, Undersheriff Kirby began to perceive preferential treatment within the CCSO. In certain instances, officers within the patrol and investigative units of the CCSO appeared to receive little to no discipline for their misconduct. In some cases, Undersheriff Kirby perceived his suggested method of discipline was being ignored.

21.

On information and belief, in 2009 a CCSO Sergeant ("Sgt. 1") abandoned his post on several occasions to visit a woman with whom he was romantically involved. Sgt. 1 continued to visit the woman's house even after the romantic relationship ended. On several occasions, Sgt. 1 entered the woman's house unannounced and uninvited. During one occasion, Sgt. 1 shined his Taser light on a wall of the woman's apartment in the early morning hours, causing her and her child distress. On another occasion, Sgt. 1 used his patrol car to initiate a traffic stop on the woman. Sgt. 1's actions scared the woman and constituted misconduct. After investigating Sgt. 1's conduct, it was recommended that Sgt. 1 be demoted. Defendants Roberts and Ellington subsequently intervened to diminish the discipline imposed on Sgt. 1.

22.

On information and belief, in 2008, a CCSO Sergeant ("Sgt. 2") initiated a pursuit after witnessing a motorcyclist commit a minor traffic violation near Clackamas Town Center. The pursuit terminated when Sgt. 2 intentionally rammed the motorcycle involved in the chase. Sgt.

COMPLAINT- Page 6

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

2's actions constituted an unreasonable use of deadly force. After investigating Sgt. 2's conduct, it was recommended Sgt. 2 be demoted. Defendants Roberts and Ellington intervened to diminish the discipline imposed on Sgt. 2.

23.

Upon information and belief, a CCSO Lieutenant ("Lt. 1") misrepresented his identity and credentials in connection to a romantic tryst while on duty. After investigating Lt. 1's conduct, Lt. 1 was allowed to retire from CCSO.

24.

Upon information and belief, a CCSO Deputy ("Deputy 1") destroyed personal property during the execution of a search warrant. At the conclusion of an investigation, Deputy 1 received no discipline and was not placed on leave.

25.

Upon information and belief, two CCSO Sergeants were found to be stealing time. Both employees were only subject to demotions and were allowed to retain their employment.

26.

Upon information and belief, it was discovered during an active drug investigation that a CCSO Deputy Sheriff ("Deputy Sheriff 1") was involved in a romantic relationship with an exotic dancer. Defendant Ellington questioned Deputy Sheriff 1 regarding his relationship. Thereafter, no investigation was made, and no disciplinary action was taken against Deputy Sheriff 1.

27.

Upon information and belief, during the fall of 2017, some new members of the Clackamas County Interagency SWAT teams were subjected to hazing rituals including the use of inappropriate dress and writings of a sexual nature.  Three CCSO command level staff were present as well as other supervisors.  Little to no actual discipline was given out to these three staff members.

/ / /

COMPLAINT- Page 7

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

28.

During the summer of 2017, it became publicly known that a former CCSO Det., Jeff Green, was under investigation for criminal conduct related to his failure to investigate child sex crimes and other criminal cases. Green ultimately pled guilty to crimes related to his failure to perform the duties of his job. Green's malfeasance was well known within the Sheriff's Office. Attempts to have Green investigated go as far back as 2013 and were met with resistance and ridicule by Ellington and Roberts. Upon information and belief Roberts, Ellington and other CCSO command staff attempted to prevent CCSO Sergeant Matt Swanson from fully reporting Green's conduct. Green was allowed to retire and thrown a party as is customary. His DPPST F-4 form was submitted at least twice to DPSST and the first one contained false information regarding the context of Green's separation of employment.

29.

In several instances, Sheriff Roberts and Undersheriff Ellington intervened to diminish or otherwise undermine disciplinary measures in cases of serious misconduct. Roberts and Ellington's treatment of Green and others within the CCSO was so grossly disproportionate with Plaintiff's case as to be evidence of discriminatory intent against Plaintiff.

30.

As Undersheriff Kirby continued to investigate and discipline members of the CCSO patrol unit, Defendants Roberts and Ellington became increasingly frustrated.

31.

In the Spring of 2009, Sheriff Roberts informed Undersheriff Kirby he was to be terminated. Undersheriff Kirby was then placed on leave.

32.

Shortly thereafter, Undersheriff Kirby was informed he would not be terminated, but would be retained and then assigned to the correctional facility. Defendant Ellington was subsequently promoted to Undersheriff and was to supervise the patrol and investigative divisions. Ultimately,

COMPLAINT- Page 8

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1    in February 2014, Kirby was forced out of CCSO.  Kirby's departure was the subject of a

2    settlement agreement between CCSO and Kirby.

3                                                          33.

4            During the week of September 12, 2016, Plaintiff met privately with CCSO senior policy

5    advisor, Kim Ybarra, in her office.  The purpose of the meeting was to finalize CCITF forfeiture

6    issues. Ms. Ybarra previously worked in the Clackamas County Counsel's Office. Ms. Ybarra and

7    Plaintiff discussed, among many other things, the lack of 'succession planning' Sheriff Roberts

8    was undertaking. A Captain promotion was quickly approaching and they discussed the likely

9    candidates and their strengths and weaknesses. Ybarra told Plaintiff to apply for Captain as he

10   would immediately jump to the front of the list alongside Lt. Jeff Smith. Ybarra told Plaintiff that

11   she was frustrated with, and "quite honestly surprised" by the lack of planning by Sheriff Roberts

12   and Ellington as she has brought up succession planning with them many times and the Sheriff

13   continually delayed any meaningful and substantive planning. Plaintiff discussed further

14   frustration that tens of thousands of dollars had been spent on a "strategic plan" years earlier that

15   was widely talked about behind the scenes by other command staff members as joke with little

16   effort to follow through. Ybarra asked Plaintiff his opinion on the next Captain and ultimately who

17   he saw fit to replace Ellington and Sheriff Roberts. Plaintiff told Ms. Ybarra he was frustrated that

18   Roberts terminated Undersheriff Kirby when he would have effectively represented CCSO into

19   the future. Ybarra told Plaintiff that "I feel the same way about Kirby as you." Ybarra and Plaintiff

20   talked about what a great guy Kirby was and that he was missed. Ybarra and Plaintiff had a short

21   conversation about what had exactly happened between Kirby and Roberts, but neither one of them

22   knew exactly what had transpired. Ybarra told Plaintiff he (Davis) was one of her "two go to guys

23   in the office" with the other being Chief Deputy Hoy. Ybarra agreed to keep her discussions with

24   Plaintiff confidential and in turn asked him not to repeat anything she said. When Plaintiff left

25   Ybarra's office it was clearly understood that their conversation would stay between them, with

26   both parties making comment about trust and the need for their conversation to remain

COMPLAINT- Page 9                                                                                                    2016-110

1    confidential, as both parties had made critical comments of upper management.

2                                             34.

3         While talking to Ybarra in the first meeting in Fall 2016, Ybarra said that she was unclear

4    why Ellington and the Sheriff had not removed Lt. Behan from his post at PSU because the topic

5    of his inability to keep confidential information confidential had come up several times. Ybarra

6    told Davis that Behan "was not long" for the PSU Lieutenant position. Ybarra told Davis that

7    Behan would likely not be a serious candidate for the upcoming Captain promotion.  Plaintiff knew

8    from prior conversations with Behan that he (Behan) did not care much for Ybarra and claimed to

9    know that many others in the office felt the same.

10                                            35.

11        Within a few days of the above meeting with Ybarra, Undersheriff Ellington invited

12   Plaintiff to coffee. Based on the timing of Ellington's request, Plaintiff was concerned his

13   discussions with Ybarra had been revealed to Ellington. Furthermore, Ellington had never asked

14   Plaintiff to coffee or lunch during their careers at CCSO. Plaintiff went to Ybarra's office after

15   receiving the invitation and told Ybarra about the meeting request with Ellington. Ybarra assured

16   Plaintiff that she had not revealed anything and that the purpose of the meeting was likely to ask

17   Plaintiff to "put in for Captain". Ybarra was very excited for the meeting with Ellington and told

18   Plaintiff to listen to Ellington and "go for Captain."

19                                            36.

20        On about September 23, 2016, Plaintiff met with Ellington for coffee. During the

21   conversation with Ellington, it became clear to Plaintiff that Ybarra had informed Ellington of

22   Plaintiff's concerns and complaints.  Ellington asked Plaintiff who he thought should be promoted

23   to Captain. Plaintiff told Ellington that he was not comfortable talking about his peers with the

24   Undersheriff and told Ellington that he was aware of his friendships with other Lieutenants.

25   Ellington remarked that he wasn't friends with any of the Lieutenants and had "only shared a

26   hunting camp with Behan." Ellington assured Plaintiff that their conversation would stay between

COMPLAINT- Page 10                                                        2016-110

them. Ellington asked Plaintiff if he was considering putting in for Captain. Ellington asked Plaintiff who he saw as the future of CCSO once he (Ellington) and Sheriff Roberts retired. Plaintiff, fearing that he couldn't say anything different than what he'd already told Ybarra, told Ellington that the Sheriff had fired the best candidate (Kirby) for the job and due to the lack of meaningful succession planning, saw no one who could immediately replace either position. Plaintiff said Ellington sat back in his chair and appeared angry. Plaintiff had previously been told that Ellington did not care for Kirby and friction between the two existed.

37.

After the meeting with Ellington, Plaintiff confided in a friend at CCSO about what had transpired with Ellington, fearing that Ybarra had leaked their conversation, and asked for advice how to handle it.

38.

Prior to a third meeting with Ybarra, Plaintiff was contacted by a confidant who called Plaintiff to expressly warn him that Ybarra had told Ellington the contents of their conversation. The confidant had information about the meeting that only Plaintiff and Ybarra would know. The confidant went on to say that nothing told to Ybarra stays with Ybarra and that she views her role often as passing information along to the Sheriff and Undersheriff.

39.

Ultimately, Plaintiff returned to Ybarra's office a third time and told her about the meeting with Ellington. Ybarra asked Plaintiff if Ellington had asked him to put in for Captain. Plaintiff told Ybarra he had not directly and Ybarra said something similar to "Matt's [Ellington] not one to come right out and ask directly." Plaintiff told Ybarra that Ellington asked some very particular questions and again asked if she'd disclosed anything to Ellington about what they'd talked about in their previous confidential meeting. Ybarra said something similar to, "Nothing specific, just a few general concerns." Plaintiff was very upset with Ybarra's answer, but was interrupted by CD Hoy walking in on their closed-door conversation.

COMPLAINT- Page 11

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

40.

Immediately after Plaintiff was put on administrative leave, he was cleaning out his assigned car in the parking structure waiting for a ride home when Ybarra walked by (about 20 feet away). They made brief eye contact and Ybarra said nothing, looked down at the ground, and continued walking past.  Based on Ybarra's actions, which was very different then their normal day to day interaction, Plaintiff felt once again that he was assumed to have done something wrong prior to any investigation being done.

41.

CCSO Lt. Behan disclosed to Plaintiff that Sgt. Matt Swanson had accused he (Behan) and others (Cpt. Rhodes and Cpt. Smith) of lying regarding the Jeff Green incident. Behan went on to say that ultimately Swanson had requested a meeting with the Sheriff only to arrive and the Sheriff and Undersheriff both were present. Behan said Swanson "called out" the Undersheriff and accused him of lying about the F4 form that was filed with DPSST on the Undersheriff's behalf. Additionally, Behan said Swanson was throwing around comments such as "cover up" and "I'm a whistle blower".  None of this information was known to Plaintiff prior to Behan's comments.

42.

Furthermore, Behan disclosed in the PSU office in fall 2016 to Plaintiff and a non-sworn employee, that a recently retired Sheriff's assistant brought him three Internal Affairs cases that had been kept separate in a box outside of PSU. The three cases were significant cases from the past that alleged criminal activity and that were intentionally left out of PSU, further eroding the current internal affairs system and how certain people are treated much differently than others.

## C.  CCSO infringes upon Plaintiff's Constitutional Rights

43.

In the Summer of 2016, Plaintiff's wife started an Instagram page.  Plaintiff's wife was clothed in these photos in a variety of attire, including athletic wear and lingerie.  There was no

COMPLAINT- Page 12

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

income generated from Plaintiff's wife's Instagram page.  However, Plaintiff's wife acquired tens of thousands of followers in a short period of time.  In response, in the fall of 2016, Plaintiff's wife formed a new business which she solely owned.  Plaintiff's wife began appearing in online webcam shows in early October of 2016.  Plaintiff's wife's business then started an online adult modeling website towards the end of December of 2016.

44.

Plaintiff did not participate in his wife's business.  Plaintiff never appeared in any modeling still photos or videos related to his wife's business.  Plaintiff did not take any video or still photos that were used on the website.  Plaintiff was never paid for any services from wife's website. Plaintiff did not use his name in any activities on the website.  Plaintiff did not create any content for the website. Plaintiff specifically and purposefully did not engage in his wife's business in order to comply with Clackamas County Sheriff Office personnel policies.

45.

In late September or early October of 2016, a Portland Police Bureau (PPB) Detective became aware of the adult entertainment business being operated by Plaintiff's wife.

46.

Plaintiff was told by a confidant in early October 2016 that PPB Detective Arjay Dran[1] discovered some of his wife's social media images on the phone belonging to a suspect of an ongoing criminal case.  Plaintiff was told that while PPB Detectives were doing a "cell phone dump" of a suspect's phone, Plaintiff's wife's social media images were discovered. It was relayed to Plaintiff that Dran did not think Plaintiff had done anything wrong, rather just surprised to have seen the photos of Plaintiff's wife. The confidant told Plaintiff that at least two CCSO Sergeants knew about the images as a result of Dran and it was likely to get out soon to the masses.

47.

The same day, Plaintiff contacted his immediate Supervisor, Captain Kevin Poppen, and

---

[1] Mr. Dran had previously served as a CCSO Deputy Sheriff.

COMPLAINT- Page 13

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

met with him in person. Plaintiff told Poppen what had happened and that his wife owned a new online adult modeling business. Plaintiff also told Poppen this was his wife's business and he was not an owner or participant in the business. Plaintiff told Poppen that they had hired an attorney to review CCSO policies, provide advice, and form his wife's business. Plaintiff asked Poppen for his personal advice on whether to tell Undersheriff Ellington or Sheriff Roberts about the business. Poppen told Plaintiff that was his decision to make and that based on what they had discussed, Poppen had no concerns about Plaintiff violating any department policies.

48.

Later the same afternoon, Plaintiff called and met in person with retired Undersheriff Kevin Layng. Plaintiff told Layng what had happened and that his wife owned a new online adult modeling business. Plaintiff told Layng that they had hired an attorney to review CCSO policies, provide advice, and form his wife's business. Plaintiff asked Layng for his personal advice on whether to tell Ellington or Sheriff Roberts about the business. Layng told Plaintiff that was his decision to make and that based on what they had discussed, Layng had no concerns about Plaintiff violating any department policies. Layng told Plaintiff that if he did decide to tell either about the business it would not change how they felt and that they would likely be upset.

49.

In the middle of October 2016, CCSO Captain James Rhodes received information regarding Plaintiff's wife's website.

50.

On October 20, 2016, Plaintiff and Ellington met alone in Ellington's office. Ellington told Plaintiff that he was there to talk to him about "a website that you and your wife are running". Plaintiff told Ellington that he and his wife were not running a website and that it was her business and he was not involved. Plaintiff told Ellington if this was what he wanted to talk about then he wanted his attorney present and he had a spousal privilege. Regardless of request to have his attorney present, Ellington asked Plaintiff if he was aware of the CCSO policy regarding "bringing

COMPLAINT- Page 14                                                                          2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

discredit to the office." Plaintiff told Ellington that he would never do anything to discredit the office and that the office was in no way involved in his wife's business. Ellington told Plaintiff that he believed him. Ellington then proceeded to tell Plaintiff that he was being placed on administrative leave. Plaintiff asked Ellington what other choice he had and Ellington told him his other choice was to reassign him away from CCITF into another role. Plaintiff asked him why he did not do that instead and Ellington told him this was the route he chose. Ellington told Plaintiff that people were beginning to find out about his wife's business and used PPB Public Information Officer (PIO) Pete Simpson as an example. Ellington told Plaintiff that Simpson had already "called" CCSO and asked them what was going on. Ellington told Plaintiff that Simpson was dating a news personality. Ellington's clear insinuation was that Plaintiff had done something wrong and it was going to cause CCSO embarrassment. Ellington told Plaintiff "I'm sure you dotted your I's and crossed your T's, but I still have to look into it." Plaintiff asked Ellington hypothetically what other legal business his wife could operate that Plaintiff would he be put on leave for? Ellington told Plaintiff that "he'd seen a little" and needed to look into it to determine its' legality, stating, "It's my job." Plaintiff assured Ellington that an attorney was used to form the business and it was legal. Ellington insinuated to Plaintiff that they had information that Plaintiff was participating in his wife's business and they needed to look into it.

51.

It was the CCSO past practice and the current administration's practice to put employees on administrative leave only if one of two conditions exist. 1) If certain the employee is facing termination for a serious policy violation or 2) if the employee was being investigated criminally.

52.

On October 20, 2016, Plaintiff was placed on paid administrative leave by Sheriff Roberts and Undersheriff Matt Ellington.

/ / /

/ / /

COMPLAINT- Page 15

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

53.

The CCSO practice was not followed in this case and was clearly meant to injure Plaintiff. Ellington was fully aware what placing Plaintiff on administrative leave would do to his career regardless of the outcome of the investigation. Ellington admittedly had another choice yet elected the harsher of the two choices.

54.

After Plaintiff was placed on Administrative Leave, Plaintiff was told by a confidant that in the beginning days of the investigation, Ellington floated the idea that if they ordered Plaintiff to tell his wife to stop her business and she refused, then Plaintiff could be fired for insubordination. This discriminatory intent demonstrates the purposed internal investigation was a pretext to firing Plaintiff. It also establishes Ellington's intent to infringe Plaintiff's First Amendment Rights regarding marriage and association.

55.

Shortly after Plaintiff was placed on Administrative Leave, he was told by a confidant that Ellington had been informing other CCSO employees of the nature of his leave and the facts underlying the investigation. Ellington's revelation of confidential, and potentially damaging information shows a flagrant disregard for Plaintiff's constitutional rights and calls into question whether Plaintiff's IA met required Due Process available to Davis under the Federal Constitution and the Oregon Peace Officer Bill of Rights.

56.

Prior to being put on administrative leave and sometime in the fall of 2016, Ellington called Davis into his office to discuss forfeiture issues within CCITF. Plaintiff thought this was a strange conversation to have since he and Ellington had previously discussed this issue ad-nauseum. Plaintiff said that after about 15 minutes he started to get up and leave when Ellington said, "one more thing". Ellington then asked Davis if he remembered that he needed to have his DPSST Management certificate in order to be a Lieutenant or higher. This caught Davis completely off

COMPLAINT- Page 16

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

guard. Plaintiff told Ellington his information was not accurate. Ellington then immediately brought up the 2008/2009 announcement for Lieutenant recruitment on his computer and showed Davis the language. Davis pointed out to Ellington that the language clearly reflected an either/or and Davis had met the requirement. Ellington realizing his mistake, apologized for not catching the error and attempted to laugh it off.   Plaintiff told Ellington that if he did not want him (Davis) to be a Lieutenant any longer there were easier ways of asking him. It was clear to Davis that Ellington had researched the issue (although not thoroughly) and called Davis into his office to ask about his DPSST certificates. This was particularly perplexing to Davis because it was a 7-year-old issue and had never been discussed with Davis previously.

57.

During Plaintiff's more than 7-year tenure as a Lieutenant, he'd been asked more than any other Lieutenant to take on the role of Acting Captain in Kevin Layng and Kevin Poppen's absence. In fact, Davis was the Acting Patrol Captain for 3 months while Ellington was away at the FBI National Academy. As an Acting Captain, Davis had been charged with typical Captain responsibilities such as running weekly Lieutenant meetings, placing people (at someone else's request) on Administrative Leave and attending weekly Captain meetings. In spite of all of this prior experience, Ellington's tone about his certificate greatly concerned Davis. So much so, that he confided his concern to a confidant and told the confidant that it was clear that Davis had a target on his back and was not going to be promoted any further. This was in spite of several years in a row of yearly evaluations where Davis was encouraged to put in for Captain when an opening arose.

58.

To show further divisive actions within CCSO by Ellington, shortly before being placed on Administrative leave with a union election near, Ellington and the Plaintiff were talking about CCITF staffing issues, when Ellington brought up how he does not particularly care for dealing with the current Union President and wanted to know if the Plaintiff had heard if "anyone was

COMPLAINT- Page 17

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1  running against him". Ellington went on to comment that he did not mind dealing with the Vice
2  Presidents, but his issues mainly resided with the current Union President.

3                                        59.

4         On November 17, 2016, after nearly a month on administrative leave, Plaintiff was
5  provided a list of policies that he was alleged to have violated and it was clearly stated by outside
6  counsel that they "may or may not apply."

7                                        60.

8         On December 19, 2016, CCSO provided Plaintiff notice of a Professional Standards Unit
9  ("PSU") investigation. The investigation was in relation to Plaintiff's wife's' alleged involvement
10 in the "pornography industry." CCSO informed Plaintiff this conduct implicated the following
11 policies: Section 1, Principle 4, Acting with Integrity; Section 3.1 Oath of Office and
12 Commissions; Section 3.2 (21) Professional Conduct; Section 3.3 (2-3) Professional Conduct; and
13 SSM 14 (1-12) Off Duty Employment.

14                                       61.

15        During the investigation, Plaintiff learned through multiple sources that Lt. Behan was
16 leading the investigation into Plaintiff while campaigning for Plaintiff's position of Task Force
17 Commander. Plaintiff was told that Behan had corresponded with or talked to Ellington regarding
18 removing him from PSU and placing him at CCITF and additionally had asked to fill in part-time
19 until a decision was made. Furthermore, Plaintiff began receiving information from people telling
20 him that they had been interviewed by Behan and Behan had ordered them not to talk to Plaintiff
21 while the investigation was ongoing, further isolating Plaintiff and causing him stress.

22                                       62.

23        Behan, has a well-known reputation within CCSO as a person who is very friendly, likes
24 to talk (gossip), and at times has trouble keeping confidential information confidential. Behan was
25 responsible for leading the investigation into his peer, Plaintiff. As an example, Behan told Plaintiff
26 prior to Plaintiff being put on administrative leave that in an effort to be promoted to Captain,

COMPLAINT- Page 18                                                    2016-110

1  Behan wanted to try and shake his reputation about talking too much. Behan told Davis that

2  Ellington had twice sat down with Behan while assigned to PSU and told him he had some

3  concerns with Behan sharing too much information while being the person in charge of PSU.

4  Behan also told Davis that his PSU position was secure as long as Ellington was Undersheriff.

5                                     63.

6          Another example, Behan told Davis and a CCITF Sergeant the following account relating

7  to Matt Swanson. In short, CCITF had an issue with the way something was handled in Wilsonville

8  and it caused Behan to show up in Plaintiff's office to ask him about it. The conversation was had

9  in front of a Sergeant. The sergeant initiated the conversation and once Plaintiff realized what was

10 going to be discussed, he interrupted and asked Behan if he wanted the Sergeant to leave and have

11 the conversation privately. Behan said, "no" and the conversation continued. In summary, Behan

12 told Davis and the Sergeant that Swanson was "untouchable" and the Sheriff and Undersheriff

13 were "scared of him".

14                                     64.

15         During this same time period, Plaintiff received a phone call from a close friend, and newly

16 promoted Captain. During the conversation, The Captain told Plaintiff that it appeared that the

17 investigation into Plaintiff was likely going nowhere, but to be prepared to come back to CCSO in

18 the role of a Lieutenant assigned elsewhere within the agency. The Captain then asked Plaintiff if

19 he had any recommendations of who to appoint to fill his role as Task Force Commander as this

20 was now under The Captain's command. Although Plaintiff partially understood why The Captain

21 was asking him for advice, Plaintiff was emotionally devastated that while on administrative leave

22 he was being asked by a Supervisor who to pick to fill his yet vacated role as Task Force

23 Commander. Plaintiff later had a second conversation with The Captain and told him how upset

24 he was that he had asked him that question while on administrative leave, telling The Captain that

25 the only reason he asked was because they were friends.

26 ///

COMPLAINT- Page 19

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

65.

Sometime in late August 2017, Plaintiff was informed by a confidant of a conversation that had taken place with Behan and the confidant, wherein Behan told the confidant something similar to, "I guess it's ok to make porn on the company dime" in response to a recent Oregonian article regarding Plaintiff. Behan was several months removed from the Internal Affairs investigation into Plaintiff.   This comment came after Plaintiff was discharged from employment under the guise of a medical layoff.

66.

During the course of the PSU investigation, CCSO employees viewed thousands of explicit photos and hundreds of hours of explicit videos of Plaintiff's wife.

67.

The investigators routinely commented on Myfreecams.com on these explicit photographs and videos under the pseudonym "pinchharder."  The CCSO bought a membership to at least one of Plaintiff's wife's cam sites using taxpayer funds.  It is unknown how many employee hours and financial resources, including overtime, were spent watching explicit content.   Plaintiff's realization that his former peers and subordinates, people he had spent 20 plus years with, were watching his wife online caused Plaintiff immense stress, anxiety, depression and impacted Plaintiff's health.  Plaintiff's doctors indicated Plaintiff could not return to work as a police office because of the psychological and physical impact of the CCSO Internal Investigation.

68.

In December of 2016, Plaintiff requested leave under the Family Medical Leave Act ("FMLA").

69.

On January 4, 2017, Plaintiff's request was granted.

/ / /

/ / /

COMPLAINT- Page 20

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

70.

CCSO outside legal counsel insisted that the investigation was almost complete and needed to interview Davis as one of its final steps. Only when Plaintiff was found medically incapable and went on Family Medical Leave, did CCSO ramp up its investigation of Davis a second time, this time under a new PSU Lieutenant (and fellow peer).   Plaintiff knows from past practice that all PSU complaints are vetted through the Undersheriff and that the Undersheriff is the direct and only contact for the PSU Lieutenant. In short, any activity regarding the investigation into Davis was run directly or indirectly through Ellington and no substantive decision would be made without consulting Ellington. The investigators used Clackamas County funds to purchase a membership to an explicit website.

71.

During the course of the investigation, Plaintiff became aware the investigators were viewing his wife's performances, tipping her, watching her private shows, and conversing with her, also with County tax payer funds.

72.

The investigators also interviewed many of Plaintiff's co-workers regarding Plaintiff's wife's activities. These interviews had no purpose other than to harass and embarrass Plaintiff.

73.

During the course of the investigation, Plaintiff became aware the investigators were interviewing several of his co-workers. Many of these co-workers were Plaintiff's close friends.

74.

As a result of the investigation, many of Plaintiff's close friends avoided contact with Plaintiff. In one such case, Davis was made aware that Ellington and Roberts discouraged a supervisor in early 2017 not to talk to or hang around Davis.

75.

As a result of the investigation, Plaintiff experienced heightened levels of stress.

COMPLAINT- Page 21

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

76.

Plaintiff's extreme stress caused and/or exacerbated several health issues.

77.

Plaintiff's FMLA leave ended on March 30, 2017.

78.

When his FMLA leave exhausted, Plaintiff was still experiencing medical issues which prevented him from returning to work.

79.

On or about March 16, 2017, Plaintiff requested extended departmental leave under CCSO policy.   Upon information and belief, extended leave has been granted in prior circumstances.

80.

On March 23, 2017, the CCSO denied Plaintiff's request for extended department leave. Because Plaintiff's medical information indicated he could not return to work, the CCSO interpreted Plaintiff's request for leave as a request for reasonable accommodation. As such, the CCSO gave Plaintiff two options: return to another position for which you are qualified, or medical layoff.

81.

The CCSO did not provide Plaintiff with a pre-termination hearing and did not attempt to reschedule the investigation hearing.

82.

Because Plaintiff was medically unable to return to work, he was terminated on April 7, 2017, in what Clackamas County termed a medical layoff.   After Plaintiff's termination, Plaintiff requested information on whether and upon what circumstances he could return to work under the County's Medical Lay Off Procedure.  The steps outlined by the CCSO made it clear Plaintiff had no realistic ability to return and any attempt would be futile if ever cleared by his doctors.  The medical lay off was functionally and legally a wrongful discharge.   In this context, the County's

COMPLAINT- Page 22

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

purported medical lay off amounts to an official policy of the County and the Sheriff's office that deprived Plaintiff of his Constitutional rights to Due Process and to the Protections afforded under the First Amendment.

## FIRST CLAIM FOR RELIEF:

### Wrongful Discharge
Count One: Constructive Discharge
(Clackamas County and the Clackamas County Sheriff's Office)

83.

Plaintiff re-alleges all paragraphs previously alleged.

84.

By repeatedly contacting and harassing his wife, friends and co-workers, the CCSO intentionally created and maintained work conditions designed to embarrass and harass Plaintiff.

85.

By denying Plaintiff's request for extended departmental leave, the CCSO intentionally created and maintained work conditions designed to prevent Plaintiff from being physically able to return to work.

86.

Plaintiff's working conditions were so intolerable that a reasonable person in his position would have resigned because of them. Because of Plaintiff's CCSO caused health issues, Plaintiffs doctor would not allow him to return to work.

87.

Sheriff Roberts and the CCSO sought to cause Plaintiff to leave his employment as a result of the conditions imposed, or knew that Plaintiff was certain or substantially certain to leave

COMPLAINT- Page 23

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1    employment as a result of the working conditions.

2                                    88.

3        As a result of the actions of Sheriff Roberts and the CCSO and the work conditions they

4    created, Plaintiff could not return to work or was forced from employment wrongfully by Ellington

5    and Roberts.

6                                    89.

7        As a result of Defendants' constructive discharge of Plaintiff, Plaintiff has suffered

8    damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for

9    family health care.  Plaintiff will also incur future damages related to medical care and mediation.

10   Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO.

11   Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination

12   of those up to the conscience of the jury.

13                   Count Two: Wrongful Termination
14             (Clackamas County and the Clackamas County Sheriff's Office)

15

16                                   90.

17   Plaintiff re-alleges all paragraphs previously alleged.

18

19                                   91.

20   Plaintiff was wrongfully discharged by the CCSO when he was forced into medical layoff.

21                                   92.

22       Plaintiff was discharged due to his wife's business and/or invoking his rights under the

23   FMLA.   Plaintiff's health deterioration was directly caused by his CCSO's investigation,

24   harassment and overzealous attempt to force Davis from employment.  Ellington had made clear

25   he wanted Davis' wife's business to stop or for Davis to be fired.

26   / / /

     COMPLAINT- Page 24                                          2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

93.

As a result of Defendants' wrongful termination of Plaintiff, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care.  Plaintiff will also incur future damages related to medical care and mediation.  Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO.  Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

**SECOND CLAIM FOR RELIEF:**

**Violation of Federal Constitutional Rights 42 U.S.C. § 1983**
Count One: Violation of Right to Free Association under the
First Amendment to the United State Constitution
(Defendant Roberts and Defendant Ellington)

94.

Plaintiff re-alleges all paragraphs previously alleged.

95.

Defendant Roberts, as the Clackamas County Sheriff, and Ellington, as the Clackamas County Undersheriff acted under color of law and in their official capacity at all times relevant to this complaint.

96.

Plaintiff's association with his wife was a protected act under the First and Fourteenth Amendments of the United States Constitution.

97.

Defendants Roberts and Ellington targeted Plaintiff due to his marriage to his wife because Roberts and Ellington morally disagreed with her professional pursuits.

/ / /

/ / /

COMPLAINT- Page 25

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

98.

Defendants Roberts and Ellington intended to punish Plaintiff for exercising his Constitutional right to free association with his wife. Defendant's intent to punish Plaintiff was a substantial and motivating factor in Defendants' actions against Plaintiff.

99.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

100.

As a result of Defendants' actions, Plaintiff was constructively discharged from his position with the Clackamas County Sheriff's Office.

101.

As a result of Defendants' actions, Plaintiff suffered harassment and embarrassment to such a degree that Plaintiff was forced to take FMLA and could not return to his position.

102.

As a result of Defendants' actions, Plaintiff suffered emotional and mental distress, including physical manifestations.

103.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care. Plaintiff will also incur future damages related to medical care and mediation. Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO. Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

/ / /

/ / /

COMPLAINT- Page 26

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

104.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

<u>Count Two: Denial of Rights Freedom of Association</u>
<u>Local Governing Body Based Upon Official Policy, Practice, or Custom and/or Failure to Train</u>
<u>(Clackamas County and Clackamas County Sheriff's Office)</u>

105.

Plaintiff re-alleges all paragraphs previously alleged.

106.

Defendant Roberts, as the Clackamas County Sheriff, and Ellington, as the Clackamas County Undersheriff acted under color of law and in their official capacity at all times relevant to this complaint.

107.

It was CCSO's longstanding, widespread policy, practice and custom to disproportionately investigate the criminal and administrative misconduct of Sheriff's Office employees.  This policy was dictated and controlled by Defendants Roberts and Ellington.    In the alternative, upon information and belief, CCSO did not adequately train its administration in the First Amendment Protections afforded its employees.

108.

Defendants Roberts and Ellington targeted Plaintiff due to his marriage to his wife because Roberts and Ellington morally disagreed with her professional pursuits.

109.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

COMPLAINT- Page 27

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

110.

As a result of Defendants' actions, Plaintiff was constructively discharged from his position with the Clackamas County Sheriff's Office.

111.

As a result of Defendants' actions, Plaintiff suffered harassment and embarrassment to such a degree that Plaintiff was forced to take FMLA and could not return to his position.

112.

As a result of Defendants' actions, Plaintiff suffered emotional and mental distress, including physical manifestations.

113.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care.  Plaintiff will also incur future damages related to medical care and mediation.  Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO.  Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

114.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

Count Three: Denial of Rights Freedom of Association
Local Governing Body Based on Act of Final Policymaker
(Clackamas County and Clackamas County Sheriff's Office)

115.

Plaintiff re-alleges all paragraphs previously alleged.

/ / /

/ / /

COMPLAINT- Page 28

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

116.

Defendant Roberts, as the Clackamas County Sheriff, and Ellington, as the Clackamas County Undersheriff acted under color of law and in their official capacity at all times relevant to this complaint.

117.

At all relevant times, Sheriff Roberts and Ellington had final policymaking authority for the CCSO, and therefore, Clackamas County.

118.

At all relevant times, when Defendants Roberts and Ellington deprived Plaintiff of his constitutional rights, they were acting as a final policymaker for the CCSO and Clackamas County.

119.

It was Defendant Roberts' and Defendant Ellington's longstanding, widespread policy, practice and custom to disproportionately investigate the criminal and administrative misconduct of Sheriff's Office employees.

120.

Defendants Roberts and Ellington targeted Plaintiff due to his marriage to his wife because Roberts and Ellington morally disagreed with her professional pursuits.

121.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

122.

Defendants Roberts and Ellington intended to punish Plaintiff for exercising his Constitutional right to free association with his wife. Defendant's intent to punish Plaintiff was a substantial and motivating factor in Defendants' actions against Plaintiff.

/ / /

COMPLAINT- Page 29

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

123.

As a result of Defendants' actions, Plaintiff was constructively discharged from his position with the Clackamas County Sheriff's Office.

124.

As a result of Defendants' actions, Plaintiff suffered harassment and embarrassment to such a degree that Plaintiff was forced to take FMLA and could not return to his position.

125.

As a result of Defendants' actions, Plaintiff suffered emotional and mental distress, including physical manifestations.

126.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care. Plaintiff will also incur future damages related to medical care and mediation. Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO. Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

127.

Plaintiff has incurred attorney's fees and costs in pursuing this claim. Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

<u>Count Four: Violation of Equal Protection
under the First and Fourteenth Amendments.
(Defendant Roberts and Defendant Ellington)</u>

128.

Plaintiff re-alleges all paragraphs previously alleged.

/ / /

/ / /

COMPLAINT- Page 30

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

129.

Defendant Roberts, as the Clackamas County Sheriff, acted under color of law and his official capacity at all times relevant to this complaint.

130.

Defendant Ellington, as the Clackamas County Undersheriff, acted under color of law and his official capacity at all times relevant to this complaint.

131.

It was Sheriff Roberts' and Undersheriff Ellington's policy to ostracize, harass and belittle individuals in the CCSO if they did not agree with their policies and practices.

132.

It was Sheriff Roberts' and Undersheriff Ellington's policy to disproportionately investigate the criminal and administrative misconduct of Sheriff's Office employees.

133.

The policies and practices of Sheriff Roberts, Undersheriff Ellington, the CCSO, and Clackamas County violate the Equal Protection Clause of the Fourteenth Amendment.

134.

The Defendants' unequal treatment of Sheriff's Office Employees prevents the CCSO from investigating all allegations of misconduct. The practice also prevents employees from receiving promotions, awards and achievements based on merit.

135.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

136.

As a result of Defendants' violation of Plaintiff's right to equal protection, Plaintiff was constructively discharged from his position with the Clackamas County Sheriff's Office.

COMPLAINT- Page 31

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

137.

As a result of Defendants' violation of Plaintiff's right to equal protection, Plaintiff suffered harassment and embarrassment to such a degree that Plaintiff was forced to take FMLA and could not return to his position.

138.

As a result of Defendants' violation of Plaintiff's right to equal protection, Plaintiff suffered emotional and mental distress, including physical manifestations.

139.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care. Plaintiff will also incur future damages related to medical care and mediation. Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO. Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

140.

Plaintiff has incurred attorney's fees and costs in pursuing this claim. Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

<u>Count Five: Unconstitutional Interference with</u>
<u>Plaintiff's Fundamental Right to Freedom of Marriage.</u>
(Defendant's Roberts and Ellington)

141.

Plaintiff re-alleges all paragraphs previously alleged.

142.

Plaintiff's association with his wife was protected acts under the First and Fourteenth Amendments of the United States Constitution.

COMPLAINT- Page 32

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

143.

The protection of the freedom of association is a matter of public concern.

144.

Marriage is one of the vital personal rights essential to the orderly pursuit of happiness by all humans.

145.

The right to marry is a fundamental right under the Due Process Clause of the Fourteenth Amendment.

146.

Plaintiff's association with his wife was a motivating factor in Roberts' and Ellington's decision to terminate Plaintiff.

147.

CCSO and Defendants Roberts and Ellington sought to undermine Plaintiff's right to an intimate association with his wife by initiating an investigation designed to harass and embarrass Plaintiff.

148.

Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards for assessing punitive damages.

149.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care.  Plaintiff will also incur future damages related to medical care and mediation.  Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO.  Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

COMPLAINT- Page 33

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

150.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.    Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

<u>Count Six: Unconstitutional Interference with Plaintiff's
Fundamental Right to Freedom of Marriage
Local Governing Body Based on Act of Final Policymaker
(Clackamas County and Clackamas County Sheriff's Office)</u>

151.

Plaintiff re-alleges all paragraphs previously alleged.

152.

Defendant Roberts, as the Clackamas County Sheriff, and Ellington, as the Clackamas County Undersheriff acted under color of law and in their official capacity at all times relevant to this complaint.

153.

At all relevant times, Sheriff Roberts and Ellington had final policymaking authority for the CCSO, and therefore, Clackamas County.

154.

At all relevant times, when Defendants Roberts and Ellington deprived Plaintiff of his constitutional rights, they were acting as a final policymaker for the CCSO and Clackamas County.

155.

It was Defendant Roberts' and Defendant Ellington's longstanding, widespread policy, practice and custom to disproportionately investigate the criminal and administrative misconduct of Sheriff's Office employees.

156.

Defendants Roberts and Ellington targeted Plaintiff due to his marriage to his wife because Roberts and Ellington morally disagreed with her professional pursuits.

COMPLAINT- Page 34

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1                                              157.

2          Defendants' conduct involved a reckless disregard or callous indifference to Plaintiff's

3  constitutional rights. Defendants' malicious, wanton, or oppressive acts are within the standards

4  for assessing punitive damages.

5                                              158.

6          As a result of Defendants' actions, Plaintiff was constructively discharged from his position

7  with the Clackamas County Sheriff's Office.

8                                              159.

9          As a result of Defendants' actions, Plaintiff suffered harassment and embarrassment to

10  such a degree that Plaintiff was forced to take FMLA and could not return to his position.

11                                             160.

12         As a result of Defendants' actions, Plaintiff suffered emotional and mental distress,

13  including physical manifestations.

14                                             161.

15         As a result of the above-described actions, Plaintiff has suffered damages totaling at least

16  $791,000, including lost wages and benefits, out of pocket costs for family health care.  Plaintiff

17  will also incur future damages related to medical care and mediation.  Plaintiff has suffered and

18  will continue to suffer emotional distress damages caused by CCSO.  Plaintiff will request at least

19  $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience

20  of the jury.

21                                             162.

22         Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled

23  to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

24  / / /

25  / / /

26  / / /

COMPLAINT- Page 35                                                          2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

<u>Count Seven: Violation of Plaintiff's Procedural Due Process Rights</u>
(Clackamas County and The Clackamas County Sheriff's Office)

163.

Plaintiff re-alleges all paragraphs previously alleged.

164.

During the course of the PSU investigation, the CCSO requested an interview with Plaintiff.

165.

At the time of the request, Plaintiff was suffering medical issues which prevented him from returning to work.

166.

The CCSO was aware of Plaintiff's medical issues.

167.

Any opportunity for a hearing provided to Plaintiff was a sham, as the CCSO was aware that Plaintiff's medical condition(s) prevented such a meeting from occurring.

168.

The CCSO failed to provide Plaintiff with another opportunity to be heard prior to his constructive discharge.

169.

As a result of the above-described actions, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care. Plaintiff will also incur future damages related to medical care and mediation. Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO. Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

/ / /

COMPLAINT- Page 36

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

170.

Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled to attorney fees, expert witness costs, litigation costs, and prejudgment interest.

### THIRD CLAIM FOR RELIEF

### Unlawful Employment Practice/Public Employee Whistleblower

### ORS 659A.203(1)(b)(A) and (B)

171.

Plaintiff re-alleges all paragraphs previously alleged.

172.

Plaintiff has satisfied the notice requirements of the Oregon Tort Claims Act.

173.

In violation of the Oregon Unlawful Employment Practices and Whistleblowing Statute, ORS 659A.203, Defendant Roberts, Defendant Ellington, the CCSO, Clackamas County, and the County's agents retaliated against Plaintiff because Plaintiff expressed concern regarding Sheriff Roberts succession plan and the overall direction of the agency.

174.

Plaintiff's discussions with Kim Ybarra regarding the mismanagement of the CCSO were a contributing factor for one or more of the following retaliatory actions in violation of ORS 659A.203(a)(b)(A) and (B): the CCSO initiating the internal affairs investigation, the CCSO placing Plaintiff on administrative leave, and Plaintiff's ultimate separation from the CCSO.

175.

As a result of the Constitutional violations and Tortious acts listed in the above claims for relief, Plaintiff was constructively discharged from his position with the Clackamas County Sheriff's Office; Plaintiff suffered harassment and embarrassment to such a degree that Plaintiff was forced to take FMLA and could not return to his position; Plaintiff suffered emotional and

COMPLAINT- Page 37

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

1  mental distress, including physical manifestations.

2  176.

3  As a result of the above-described actions, Plaintiff has suffered damages totaling at least

4  $791,000, including lost wages and benefits, out of pocket costs for family health care.  Plaintiff

5  will also incur future damages related to medical care and mediation.  Plaintiff has suffer and

6  will continue to suffer emotional distress damages caused by CCSO.  Plaintiff will request at

7  least $1,000,000 in emotional distress but leaves the exact determination of those up to the

8  conscience of the jury.

9  177.

10  Plaintiff has incurred attorney's fees and costs in pursuing this claim.   Plaintiff is entitled

11  to attorney fees, expert witness costs, litigation costs, and prejudgment interest

12

13  **FOURTH CLAIM FOR RELIEF**

14  **Intentional Infliction of Emotional Distress**

15  178.

16  Plaintiff re-alleges all paragraphs previously alleged.

17  179.

18  Defendants' intended to inflict severe mental or emotional distress upon Plaintiff.

19  Alternatively, severe mental or emotional distress was certain or substantially certain to result from

20  Defendants' conduct.

21  180.

22  By repeatedly contacting and harassing his wife, friends and co-workers, Defendant

23  transgressed the bounds of socially tolerable conduct and/or exceeded any reasonable limit of

24  social toleration.

25  / / /

26  / / /

COMPLAINT- Page 38

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon  97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

181.

Defendants' conduct was outrageous and extreme.

182.

Defendants' conduct caused Plaintiff to suffer severe emotional distress, which resulted in physical manifestations.

183.

As a result of Defendants' conduct, Plaintiff has suffered damages totaling at least $791,000, including lost wages and benefits, out of pocket costs for family health care. Plaintiff will also incur future damages related to medical care and mediation. Plaintiff has suffered and will continue to suffer emotional distress damages caused by CCSO. Plaintiff will request at least $1,000,000 in emotional distress but leaves the exact determination of those up to the conscience of the jury.

WHEREFORE Plaintiff pray as follows:

1. Finding that Defendants violated Plaintiff's constitutional right to Free Association;

2. Finding that Defendants constructively discharged Plaintiff;

3. Finding that Defendants wrongfully discharged Plaintiff;

4. Finding that Defendants intentionally inflicted emotional distress on Plaintiff;

5. Judgment against Defendants for Economic loss of at least $791,000;

6. Judgment against Defendants for non-economic losses to Plaintiff for the constitutional violations and intentional infliction of emotional distress herein in the amount of at least $1,000,000 or an amount to be proven at trial;

7. Judgment against Defendants for deterrence damages in a fair and reasonable amount to be proven at trial; and

/ / /

/ / /

COMPLAINT- Page 39

2016-110

THENELL LAW GROUP, P.C.
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
Telephone (503) 372-6450
Facsimile (503) 372-6496

8. Judgment for costs, interests, attorney fees and such other and further relief as the Court deems just and equitable under Oregon law and 83 U.S.C 1988.

DATED this 26th day of February 2018.

THENELL LAW GROUP, P.C.

By:    */s/ Daniel E. Thenell*
Daniel E. Thenell, OSB No. 971655
E-mail:  dan@thenelllawgroup.com
Telephone: (503) 372-6450
Of Attorneys for Plaintiff

COMPLAINT- Page 40

2016-110